# STATE OF OREGON,
*Appellant,*

*v.*

# JOHNNY DALE FREELAND,
*Respondent.*

## (No. C81-04-32282; CA A22721)

647 P2d 966

Virginia L. Linder, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

James S. Coon, Portland, argued the cause for respondent. With him on the brief was Sobel & Coon, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

The state appeals an order of the circuit court dismissing the indictment charging defendant with the crime of robbery in the second degree. The dismissal was grounded on the state's refusal to afford defendant a post-indictment preliminary hearing within 30 days after being directed to do so by the court. The state contends that the dismissal should be reversed, because the decision to initiate the prosecution of defendant by indictment rather than by information and preliminary hearing was based on criteria uniformly applied to all defendants similarly situated and, thus, under *State v. Clark*, 291 Or 231, 630 P2d 810 (1981), and *State v. Edmonson*, 291 Or 251, 630 P2d 822 (1981), did not violate defendant's equal protection rights. We agree and reverse and remand for trial.

Defendant was arrested and charged by information on April 24, 1981. A preliminary hearing was set for May 4, 1981. On May 1, 1981, however, a deputy district attorney presented defendant's case to the grand jury, which returned an indictment on that date. At the scheduled preliminary hearing on May 4, 1981, defendant was informed of the grand jury indictment, at which time he objected and requested a preliminary hearing. The district court denied that request.

Defendant then moved in circuit court for a post-indictment preliminary hearing or, in the alternative, for dismissal of the indictment, contending that the state's refusal to grant him a preliminary hearing violated his rights to equal protection under the Fourteenth Amendment to the United States Constitution[1] and to equal privileges under Article I, section 20, of the Oregon Constitution.[2] On the basis of *State v. Clark, supra*, and *State v.*

---

[1] US Const, Amend 14, § 1, provides:

"* * * No State shall * * * deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[2] Or Const, Art I, § 20, provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

*Edmonson, supra,* in which the Supreme Court held that the mere coexistence of two constitutionally authorized means of initiating prosecution (Or Const Art VII (amended), § 5[3]), does not deny a defendant equal protection or equal privileges, absent a showing that the administration of the two procedures fails to meet other constitutional standards *(e.g.,* Or Const Art I, § 20), defendant requested, and was granted, a hearing to make such a showing.

At the hearing, the District Attorney for Multnomah County, Michael Schrunk, as well as the deputy to whom defendant's case was assigned, Lance Caldwell, testified. Mr. Schrunk stated that his office has no written policy concerning which cases are presented to the grand jury, and which cases are charged by information requiring a preliminary hearing, except in cases involving rape or sexual assault and youthful victims. In those cases, the

---

[3] Or Const, Art VII (amended), § 5, provides:

"(1) The Legislative Assembly shall provide by law for:

"(a) Selecting juries and qualifications of jurors;

"(b) Drawing and summoning grand jurors from the regular jury list at any time, separate from the panel of petit jurors;

"(c) Empaneling more than one grand jury in a county; and

"(d) The sitting of a grand jury during vacation as well as session of the court.

"(2) A grand jury shall consist of seven jurors chosen by lot from the whole number of jurors in attendance at the court, five of whom must concur to find an indictment.

"(3) Except as provided in subsections (4) and (5) of this section, a person shall be charged in a circuit court with the commission of any crime punishable as a felony only on indictment by a grand jury.

"(4) The district attorney may charge a person on an information filed in circuit court of a crime punishable as a felony if the person appears before the judge of the circuit court and knowingly waives indictment.

"(5) The district attorney may charge a person on an information filed in circuit court if, after a preliminary hearing before a magistrate, the person has been held to answer upon a showing of probable cause that a crime punishable as a felony has been committed and that the person has committed it, or if the person knowingly waives preliminary hearing.

"(6) An information shall be substantially in the form provided by law for an indictment. The district attorney may file an amendment indictment or information whenever, by ruling of the court, an indictment or information is held to be defective in form.

"(7) In civil cases three-fourths of the jury may render a verdict."

policy is to avoid a preliminary hearing in deference to the victims. In other cases, the decision is entrusted to the deputy district attorney assigned to the case, who applies the criteria discussed below in making a decision.

In property crimes, if the defendant is not in custody, the general approach is to submit the case to the grand jury. If, however, the defendant has been arrested, the case is handled differently. Police detectives present the case to a deputy district attorney for review. Frequently an arraignment is set for the same day, and a date for a preliminary hearing is set. Nevertheless, other considerations may lead the deputy to decide to submit the case to the grand jury. Those considerations were explained by Mr. Schrunk.

The complexity of the case, he said, is an important factor for several reasons. A complex case may involve a number of witnesses, both civilian and police, and the various schedules of the witnesses may make it difficult to hold a preliminary hearing. Also, the amount of witness time and judicial time required to hold a preliminary hearing in a complex case is considered. Because the case can be tried to the grand jury in a piecemeal fashion, permitting one witness to appear in the morning, and the next much later in the day and so on, witnesses' schedules can be accommodated better. However, when a minimum amount of court time will be involved and only a few witnesses need to be called, a preliminary hearing is favored. The complexity of the case is also relevant to the prosecuting attorney's ability to prepare the case for a preliminary hearing. Because of local judicial constraints (apparently based on former ORS 135.070), a preliminary hearing must be held within five days or as soon as possible thereafter. Where the facts of a case are complex, the investigation and preparation of the case may not be complete.

The status of the docket on any given day is a further consideration. There are times when a preliminary hearing is feasible, because courtrooms are readily available. On other days, however, when the docket is full, hearings sometimes run several hours behind schedule. When the hearing is unexpectedly delayed, other demands on the

time of the attorneys and witnesses who need to be present at the hearing frequently interfere with their ability to do so.

The identity of an individual defendant in the case is sometimes a factor. If the defendant has a "high profile," undue publicity may follow from a preliminary hearing; therefore, a preliminary hearing is avoided. The usual emphasis, however, is on the victim and the witnesses, rather than on the individual defendant. Sex, race and similar characteristics are not factors in deciding which procedure to follow.

One other factor favoring a grand jury proceeding over a preliminary hearing occasionally arises in eyewitness cases when the eyewitness' identification is tentative. Because an identification of a defendant made during a preliminary hearing might be considered suggestive, the prosecutor in such a case may prefer to have the witness make an identification by means of a lineup to obviate a later claim of tainted identification.

Mr. Schrunk also testified that if the defendant has no criminal record a preliminary hearing is more likely, because a showing of witnesses at the hearing may convince the defendant to plead guilty, whereas a defendant with multiple convictions is more likely to go to trial in any event. Deputies also consider avoiding the possibility of inconsistency between witnesses' testimony at a preliminary hearing and that given later at trial. Both of those considerations were characterized appropriately by the trial court as tactical.

Mr. Caldwell, the deputy district attorney assigned defendant's case, testified that he understood the decision to initiate prosecution by indictment or by preliminary hearing to be within his sole discretion and that his decision to present defendant's case to the grand jury for indictment was based on "logistical reasons." Those reasons include the complexity of defendant's case (three codefendants and several witnesses were involved) and his concern that the deputy district attorney assigned to present case at preliminary hearings would not have sufficient time to prepare the case effectively. Mr. Caldwell, as well as Mr.

Schrunk, testified that the treatment of defendant's case was no different from that of any other similar case.

The circuit court concluded that defendant was denied equal protection of the laws because

"* * * the decision [to initiate prosecution by indictment or by information and preliminary hearing] is made primarily at the discretion of the prosecution who bases his decision upon 'logistical' and 'tactical' criteria, [and thus] the choice of procedure is administered 'purely haphazardly or otherwise on terms that have no satisfactory explanation under Art. I, § 20.' *State v. Edmonson, supra,* 291 Or at 254. * * *"

The court ordered the state to afford defendant a preliminary hearing within 30 days or suffer dismissal of the indictment. At the end of the 30-day period, the state had not scheduled a preliminary hearing, whereupon the indictment was dismissed on defendant's motion.

We are uncertain where *Clark* and *Edmonson* lead us. It is clear from those cases that the existence of both procedures, expressly sanctioned by Article VII (amended), section 5, does not, *per se,* violate either the Oregon or the federal constitutions. It mandates that a person be charged with a felony in the circuit court "only on indictment by a grand jury," except as provided in subsections (4) and (5). Those subsections permit the district attorney to charge a person on an information filed in circuit court with a crime punishable as a felony if the person knowingly waives indictment in person before a circuit judge (subsection (4)), or if, after a preliminary hearing before a magistrate, the person has been held to answer upon a showing of probable cause that the person has committed a crime punishable as a felony, or if the person knowingly waives preliminary hearing. (Subsection (5).)

From those provisions, it is equally clear that the district attorney has discretionary authority to charge a person by information under the limited circumstances prescribed in Article VII (amended), section 5. *Clark* tells us that the "opportunity of a preliminary hearing is a 'privilege' within the meaning of the constitutional guarantee" (Art I, § 20), 291 Or at 241, and that the procedural rights afforded a defendant at a preliminary hearing (ORS 135.070

- .185) offer important advantages over those afforded a defendant charged by indictment. 291 Or at 242. Yet the opinion recognizes that the grant or denial of this privilege is controlled by the state; the choice is not for the defendant to elect. It may be that the constitutional provisions emphasizing the requirement of proceeding by way of the grand jury, with only the carefully delineated exceptions, are outmoded and that all charges should be made by way of information and preliminary hearing, or that the defendant should have the option to choose which route to follow. Given the existing provisions of the constitution, however, that decision is not available to the courts or to defendants.

Because the choice of procedure belongs to the state, the question is how that choice may or must be made. It is clear that the state may not single out a particular defendant for "discriminatory treatment either as an individual or as a member of a disfavored minority. * * *" *State v. Clark, supra,* 291 Or at 242. In *Clark,* the court concluded its discussion on this point:

> "* * * Without a showing that the administration of Or Const art VII, § 5 and ORS 135.070-135.185 in fact denied defendant individually, or a class to which he belongs, the equal privilege of a preliminary hearing with other citizens of the state similarly situated, the circuit court did not err in denying the motion to dismiss the indictment." 291 Or at 243.

In *State v. Edmonson, supra,* the court repeated the above statement, but added:

> "* * * In other words, defendant's constitutional claim requires a showing how the choice of procedure is administered, and whether it offers or denies preliminary hearings to individual defendants, or to social, geographic, or other classes of defendants (apart from the 'classification' formed by the choice itself) purely haphazardly or otherwise on terms that have no satisfactory explanation under art I, § 20. * * *" 291 Or at 253-54.

The trial court here relied on that language from *Clark* and *Edmonson,* with emphasis on *Edmonson.* However, appears that the trial court's conclusion that there were equal privilege and equal protection violations here was based primarily on the existence of broad prosecutorial

discretion in determining how to initiate a prosecution, not because the criteria used to make that determination were discriminatory or because that discretion was exercised in this instance in a manner that was constitutionally impermissible. The court concluded that the uniform policy of submitting cases involving sexual assaults and minor victims was probably a constitutionally supportable classification.

Although the trial court's reading of the quoted language from *Edmonson* and *Clark* is not unfounded,[4] when the two cases are read together as a whole we do not believe that the court intended to require clearly delineated categories requiring one or the other choice of procedure. The court clearly recognized that the choice of how to charge a defendant belongs to the state and that there is prosecutorial discretion in making that choice. In a separate portion of the *Clark* opinion, the court discussed defendant's claim that the state's broad discretion to grant immunity to potential codefendants without reference to written or otherwise articulated standards and guidelines constituted a violation of equal protection. The court said:

"*** As far as equal protection is concerned, the principles of analysis would be similar to those set forth in Part I, above. We may assume that there are impermissible reasons for granting immunity to one or a class of citizens; those, after all, are the very terms of article I, section 20. *See also* note 12 *supra; In re Roger Rook, supra* [276 Or 695, 556 P2d 1351 (1976)]; *State v. Langley, supra* [214 Or 445, 315 P2d 560, 323 P2d 301 (1958)]; However, as with respect to his motion to dismiss the indictment for lack of a preliminary hearing, defendant has made no effort to show that the handling of his case violated those principles. Rather, he attacks the range of the prosecutor's discretion without previously stated standards as a denial of equal protection on its face. *We do not believe equal protection goes so far as to require previously stated standards as long as no discriminatory practice or illegitimate motive is shown and the use of discretion has a defensible explanation.* [Citations omitted.]" (Emphasis supplied.) *State v. Clark, supra,* 291 Or at 246.

Here, the district attorney had only one written policy: cases involving rape or sexual assaults and youthful victims are submitted to the grand jury. In all other

---

[4] It may even be the correct reading; we share the trial court's dilemma.

cases, it is within the discretion of the deputy to whom the case is assigned to make the decision, based on the general considerations which have been stated above. Those considerations or criteria do not, on their face, classify or treat persons differently on the basis of personal characteristics or as members of a disfavored minority or, for that matter, any impermissible class. Concededly, there is a wide latitude in making the choice, and no policy which *requires* one procedure rather than the other. There are, however, rational explanations underlying the general policies developed for the purpose of decision-making.

■　　Nothing in *Clark* or *Edmonson* tells the state exactly how its discretion in determining how to initiate a prosecution is to be exercised. We believe that the appropriate test is whether the criteria, which the record shows have been developed, if applied, result in unconstitutional classification or discriminatory treatment in practice. We do not believe that it is enough to show that the range of prosecutorial discretion is such that impermissible bases *might* be a factor in making the decision.

■　　We find nothing in this record showing that the handling of this defendant's case violated equal privilege or equal protection principles. Defendant has not shown that he was treated differently from other defendants similarly situated (at least in Multnomah County) or that the criteria used by the district attorney to determine which defendants receive preliminary hearings result in a discriminatory practice. The district attorney testified that defendant was treated like all other defendants whose cases present similar considerations. Clearly, the criteria developed by the district attorney give primary consideration to the state or to witnesses or victims — persons other than the defendant. But we do not understand the focus of those considerations, in the context of the choice granted the state by the constitution, to be impermissible so long as they do not single out an individual or class for disparate treatment.[5]

---

[5] *Clark* and *Edmonson* suggest that if different criteria are used in different counties, a defendant might be able to show that he has been denied a privilege which other defendants, similarly situated in such other county, are granted. That case is not before us, but we submit that if that suggestion is taken at face value a great deal of judicial resources will be devoted to preliminary skirmishing over the question of *how* it must be determined that probable cause exists to believe

Reversed and remanded for trial.

that a felony has been committed and that the defendant committed it. Furthermore, if uniform criteria must be applied statewide, some central source must provide them — the district attorneys by collective action, the legislature or the Supreme Court. That solution, even if feasible, would dilute substantially, if not obliterate, prosecutorial discretion. One way to avoid any claim of denial of equal privileges would be for the district attorneys to adopt a uniform policy to submit all felony cases to the grand jury.

The foregoing problems and considerations militate in favor of our interpretation of *Edmonson* and *Clark:* the state may not decide against providing a defendant a preliminary hearing by virtue of the defendant's individual characterics *(e.g.,* race, color, religion, sex) or by virtue of defendant's being a member of a disfavored minority or other impermissible class.