Argued and submitted June 29, affirmed December 14, 1983

# STATE OF OREGON,
*Appellant,*

*v.*

# DANTE HALLING,
*Respondent.*

(C 82-05-35518, C 82-05-35519; CA A25762)

672 P2d 1386

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Larry Baron, Metropolitan Public Defender, Portland, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

The state appeals from an order which dismissed two indictments. The first charged defendant with burglary I, ORS 164.225, and hindering prosecution. ORS 162.325. The second alleged a separate charge of hindering prosecution. Both indictments were dismissed on the basis of a finding of prosecutorial vindictiveness. Because we find that the trial court applied the proper standard, we affirm.

This case arises out of an incident in which defendant allegedly fired a gun into the body of a man who had already died from other bullet wounds inflicted by defendant's accomplice. Defendant is also alleged to have lied to police about his involvement in the incident and to have returned subsequently to the scene of the crime to destroy evidence. Because a claim of prosecutorial vindictiveness has more to do with the actions of the prosecutor than it does with the actions of the defendant, a review of her actions is necessary.

Deputy District Attorney Johnson responded to the scene of the crime and attended the autopsy. In March, 1980, defendant was charged in juvenile court. However, in November, 1980, the case was remanded to circuit court so that defendant could be tried as an adult. Johnson assumed control of the case for prosecution purposes. Over one year later, in February, 1982, defendant was indicted for attempted murder, ORS 163.115. Johnson testified that the delay resulted from a tactical decision to put off charging defendant until his accomplice's murder trial was concluded.[1] The parties met on May 6, 1982, for a pretrial conference. Johnson offered to recommend a six-year sentence in exchange for defendant's plea of guilty to the charge of attempted murder. Defendant's attorney consistently maintained that he intended to try the case, and on May 19, 1982, he informed Johnson that he "expected three or four days of pretrial motions" before the trial could commence. The following day, Johnson telephoned defendant's attorney and made the following remark:

"Larry, I have a brilliant idea. I have just thought of a way to cause further evil to poor Mr. Halling."

---

[1] Defendant's alleged accomplice was ultimately convicted of manslaughter I. ORS 163.118.

Johnson then proceeded to inform defendant's attorney that she intended to charge defendant with additional crimes unless he accepted her previous offer. However, defendant, through his attorney, continued to insist on taking his case to trial. On May 28, 1982, Johnson secured the two additional indictments which were dismissed by the trial court. (In October, 1982, defendant stood trial on the attempted murder charge and was acquitted by a jury.)

In ruling on defendant's motion to dismiss the charges, the trial judge made specific factual findings. He found that no one ever mentioned any charges against defendant except attempted murder before May 20, 1982, in spite of the fact that all of the information concerning the incident was available to Johnson in the form of police reports as early as March, 1980. He also found that the state's offer of compromise was formally rejected by defendant on May 19, 1982. The trial court's conclusions were:

> "* * * [A]s the Court interprets the facts, and based on that, the Court feels that this is a case of overzealous prosecution after pretrial negotiations had ended and been rejected, and in reprisal, new charges would be brought.

> "Based on that, the Court finds that these additional charges should be enjoined."

On appeal, the state maintains that the trial judge erroneously relied on a "presumption of vindictiveness" which was expressly rejected by the US Supreme Court in *United States v. Goodwin*, 457 US 368, 102 S Ct 2485 73 L Ed 2d 74 (1982). Defendant contends that the trial court was fully aware of the *Goodwin* decision and applied the proper standard. We agree.

■ The practice of dismissing charges motivated by prosecutorial vindictiveness is rooted in due process protections. To punish a person because he has done what the law allows is a due process violation of the most basic kind. *Bordenkircher v. Hayes*, 434 US 357, 363, 98 S Ct 663, 54 L Ed 2d 604 (1978). The danger is not only that a defendant will be deterred from exercising his constitutional rights, but also that the state might be retaliating against the accused for his lawful exercise of them. *Bordenkircher v. Hayes, supra*. This risk has traditionally been confronted in situations where a

trial judge imposes a more severe sentence upon a defendant after retrial following a successful appeal.

In *United States v. Goodwin, supra,* the Court addressed a charge of prosecutorial vindictiveness in a case similar to this one. The Supreme Court rejected the "presumption of vindictiveness" under the facts there, noting that a mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule. 457 US at 384. However, the Court did not preclude all claims of vindictive prosecution.

> "In declining to apply a presumption of vindictiveness, we of course do not foreclose the possibility that a defendant in an appropriate case might prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do. * * *" 457 US at 384. (Footnote omitted.)

So, even assuming that *Goodwin* precludes reliance on a presumption under any set of facts, a claim of this type may still succeed if based on objective proof of actual vindictiveness.

■     As previously noted, the trial judge found that the additional charges against defendant were brought in "reprisal" for defendant's rejection of a plea bargain. We agree with defendant that that is tantamount to a finding that "the prosecutor's charging decision was motivated by a desire to punish" defendant for insisting on a jury trial.

The state contends that the findings are not supported by the evidence in this case. On the basis of our examination of the record, we conclude that the trial court's dismissal of the two indictments of May 28, 1982, was proper. The prosecuting attorney was fully aware of the facts giving rise to the hindering prosecution and burglary I charges as much as two years before the charges were brought, yet no mention was ever made of them until the day after defendant had finally refused the state's plea bargain. The timing of her decision to seek two new indictments, as well as her remarks concerning "doing evil" to defendant, convince us that there

was adequate evidence to support the trial court's finding of prosecutorial vindictiveness. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968); *State v. O'Keefe,* 40 Or App 685, 596 P2d 987 (1979).

Affirmed.