## STATE OF OREGON,
*Respondent,*

*v.*

## CLIFTON WASH,
*Appellant.*

(C82-04-34959; CA A27631)

684 P2d 18

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Jan Peter Londahl, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendant appeals his conviction for robbery in the first degree, contending that, under the standards set forth in *State v. Freeland,* 295 Or 367, 667 P2d 507 (1983), the trial court erred in denying his motion for a post-indictment preliminary hearing and that the court erred in excluding certain evidence. We affirm.

On April 29, 1982, defendant was indicted; he pled not guilty. On July 13, he filed a motion for a post-indictment preliminary hearing or, in the alternative, for dismissal. At the hearing on his motion, defendant called Multnomah County Deputy District Attorney Robinson, who testified that he had made the decision to seek a grand jury indictment rather than to proceed to a scheduled preliminary hearing. At the time of that decision, Robinson was a member of the office's Major Violator/Career Criminal Unit. He testified that it was the policy of the unit

> "* * * to carry all of our cases to the Grand Jury although I would indicate to the court the individual deputies have the discretion to make various decisions regarding that issue, technique if they wish."

He also stated that, during the 18 months he was assigned to the unit, the only case he had taken to a preliminary hearing involved a charge of first degree robbery where the victim had identified a suspect other than defendant in a throwdown. He explained that the preliminary hearing would give the victim an opportunity to identify the suspect and, failing that, the case would be dismissed.

When asked if he could articulate a basis for taking cases to the grand jury, Robinson cited expediency as the primary reason. He also stated that, when noncustodial defendants flee, other jurisdictions prefer indictments over informations and that convenience, the complexity of the cases and the number of witnesses involved were additional reasons for preferring indictments. He acknowledged that in March, 1982, his office had promulgated written guidelines to be considered in deciding whether to seek an indictment or to proceed to a preliminary hearing. When asked to point to one of the policies applicable to this case, Robinson cited the following:

"(d) Need for a speedy trial. Use of Grand Jury eliminates several days of delay between arrest and trial. This permits swift prosecution of career criminals."

He also stated that he thought that he had determined that defendant was a career criminal and that "it was our policy to take people in that posture to the Grand Jury."[1]

Defendant submitted an affidavit in support of his motion, listing five first degree robbery cases that had gone to preliminary hearing between January, 1980, and June, 1982. The state stipulated to the accuracy of that information. The trial court denied defendant's motion, and defendant subsequently was convicted as charged.

The Oregon Constitution authorizes the charging of an individual accused of a felony either by grand jury indictment or by a district attorney's information filed after a magistrate's determination of probable cause at a preliminary hearing. Or Const, Art VII (Amended), § 5(3) to (5); ORS 135.070 to 135.185. In *State v. Clark,* 291 Or 231, 630 P2d 810, *cert den* 454 US 1084 (1981), the court concluded that the coexistence of the two procedures does not, in and of itself, violate equal protection guarantees. It stated, however, that, because a preliminary hearing is a privilege of significant importance to an accused, the prosecutor's choice to employ one method or the other must comply with the constitutional command that no law shall grant "any citizen or class of citizens privileges, or immunities, which upon the same terms, shall not equally belong to all citizens." Or Const, Art I, § 20.

In *State v. Freeland, supra,* 295 Or at 374, the court, citing *State v. Edmonson,* 291 Or 251, 254, 630 P2d 822 (1981), reiterated that

"'* * * a constitutional claim for equal treatment is made out when the accused shows that preliminary hearings are offered or denied 'to individual defendants, or to social, geographic, or other classes of defendants . . . purely haphazardly or otherwise on terms that have no satisfactory explanation under art I, § 20.' "

---

[1] During the time that the robbery charge was under investigation, defendant was taken into custody on other charges for first degree burglary, being an ex-convict in possession and for possession of a controlled substance. Robinson stated, "When I looked at all of these cases I looked at them as one group of cases that I was going to be dealing with."

As articulated by the court, the question presented in *Freeland* was

> "* * * whether a prosecutor's use of the two charging procedures [for defendants accused of robbery] adheres to sufficiently consistent standards to represent a coherent, systematic policy, even when not promulgated in the form of rules or guidelines. * * *" 295 Or at 375.

Because the prosecutor's decision to grant or deny a preliminary hearing in each case depended on a number of factors, including the criminal profile of the defendant, the anticipated plea, the risk of a tainted eyewitness identification and other logistical and tactical concerns, the court concluded that the decision did not rest on " 'meaningful criteria that indeed make the privileges of a preliminary hearing equally available to all persons similarly situated * * *.' " 295 Or at 381.

■     Defendant appears to contend that, because the deputy district attorney's testimony emphasized the administrative convenience of pursuing a grand jury indictment, his decision to deny a preliminary hearing rested on constitutionally impermissible grounds. In *Freeland,* however, the court specifically emphasized that "reasons of efficiency" are among the permissible criteria for the choice between alternative procedures. 295 Or at 373. What the court sought to preclude is the haphazard, purely *ad hoc* application of reasons of efficiency to individual cases. Here, it does not appear that such factors as efficiency, the complexity of the case and the number of witnesses involved were considered in granting or denying a preliminary hearing in specific instances, but rather represented the basis for the Career Criminal Unit's policy of seeking indictments in all cases.[2]

Although the deputy district attorney testified that individual deputies retained discretion to deviate from that policy on a case-by-case basis, *Freeland* teaches that a complaint of unequal treatment cannot rest simply on the existence of discretion alone. 295 Or at 367. "Discretion to choose

---

[2] Both the hearing on defendant's motion and his conviction for robbery in the first degree occurred before the Supreme Court's decision in *Freeland.* Because the defendant in *Freeland* also challenged the Multnomah County District Attorney's use of alternative charging procedures for individuals accused of robbery, were it not for the fact that defendant was classified as a career criminal and that the prosecutor here had a policy of referring career criminal cases to the grand jury, the present case would appear to be factually indistinguishable from *Freeland.*

a policy is not incompatible with consistency in practice." 295 Or at 377. In establishing five instances in which first degree robbery cases were referred to a preliminary hearing, defendant has attempted to demonstrate that there was no consistent policy of referring those types of cases to either the grand jury or a preliminary hearing. Although *Freeland* recognizes that a choice of charging procedure based on the type of offense would not be an unconstitutional classification, it does not suggest that that criterion is the only one permissible. 295 Or at 375.

■ On this record, there is no showing that the robbery cases to which defendant referred in his affidavit concerned "career criminals" or were prosecuted by the Major Violator/ Career Criminal Unit. In short, because defendant failed to develop the criteria under which cases were referred to that unit or individual decisions were made to deviate from the unit's policy of referring all cases to the grand jury, he has failed to demonstrate how he was treated impermissibly differently from other defendants. The trial court did not err in denying defendant's motion.

Defendant's other assignment of error is without merit.

Affirmed.